UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORGETTE FLEISCHER,

Plaintiff,

v.

BARNARD COLLEGE and LOCAL 2110 OF THE
UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS (UAW),

Defendants.

Case No. 19 cv 10738 (RA)

**MEMORANDUM OF LAW IN SUPPORT OF LOCAL 2110 UAW'S
MOTION TO DISMISS THE COMPLAINT**

Dana E. Lossia
LEVY RATNER, P.C.
80 Eighth Avenue, Floor 8
New York, NY 10011-5126
(212) 627-8100
(212) 627-8182 (fax)
dlossia@levyratner.com

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................... 1

FACTS ....................................................................................................................................... 2

ARGUMENT ........................................................................................................................... 15

   I.  LEGAL STANDARD FOR A MOTION TO DISMISS .................................................. 15

   II.  THE UNION DID NOT BREACH ITS DUTY OF FAIR REPRESENTATION ........... 15

         A.     THE DFR STANDARD ....................................................................................... 16

         B.     PLAINTIFF'S CLAIMS CONCERNING THE UNION'S CONDUCT
                PRIOR TO HER NON-REAPPOINTMENT ARE UNTIMELY ........................ 18

         C.     THE UNION DID NOT BREACH ITS DFR IN ITS HANDLING OF THE
                GRIEVANCE AND ARBITRATION ................................................................. 18

         D.     THE UNION HAS NO DUTY TO PETITION TO VACATE AN
                ARBITRATOR'S AWARD, NOR DID GROUNDS EXIST FOR
                DOING SO ............................................................................................................ 20

CONCLUSION ........................................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Line Pilots Ass'n Int'l v. O'Neill,*
 499 U.S. 65 (1991) ................................................................................................. 16, 17

*Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.,*
 492 F.3d 132 (2d Cir. 2007) ........................................................................................ 21

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ...................................................................................................... 15

*Barr v. United Parcel Serv., Inc.,*
 868 F.2d 36 (2d Cir. 1989) ..................................................................................... 17, 18

*Bartel v. New York Lithographers' and Engravers' Union No. One-P,*
 306 F. Supp. 1266 (S.D.N.Y. 1969), *aff'd* 431 F.2d 1205 (2d Cir. 1970) ............... 19

*Bejjani v. Manhattan Sheraton Corp.,*
 No. 12 CIV. 6618 JPO, 2013 WL 3237845 (S.D.N.Y. June 27, 2013),
 *aff'd,* 567 F. App'x 60 (2d Cir. 2014) ....................................................................... 20

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) ...................................................................................................... 15

*Blesedell v. Chillicothe Tel.,*
 *G.*, 811 F. 3d 211 (6th Cir. 2016) ............................................................................... 16

*Cali v. E. Coast Aviation Servs., Ltd.,*
 178 F. Supp. 2d 276 (E.D.N.Y. 2001) .......................................................................... 7

*Capobianco v. Brink's, Inc.,*
 543 F. Supp. 971 (E.D.N.Y. 1982), *aff'd mem.*, 722 F.2d 727 (2d Cir. 1983) ......... 22

*Considine v. Newspaper Agency Corp.,*
 43 F.3d 1349 (10th Cir. 1994) ..................................................................................... 17

*Cooper v. TWA Airlines, LLC,*
 274 F. Supp. 2d 231 (E.D.N.Y. 2003) ......................................................................... 17

*Crowell v. Int'l Bhd. of Teamsters,*
 2001 WL 1230531 (S.D.N.Y. Oct. 16, 2001) ............................................................. 21

*DelCostello v. Int'l Bhd. of Teamsters*,
    462 U.S. 151 (1983) ............................................................................................ 18

*Dolan v. Soft Drink and Brewery Workers Union*,
    2018 WL 1940428 (S.D.N.Y. Apr. 23, 2018) ...................................................... 21

*FCC v. Beach Communications, Inc.*,
    508 U.S. 307 (1993) ............................................................................................ 17

*Ford Motor Co. v. Huffman*,
    345 U.S. 330 (1953) ..................................................................................... 16, 17

*Goel v. Bunge, Ltd.*,
    820 F.3d 554 (2d Cir. 2016) ................................................................................. 6

*Hague v. United Paperworkers Int'l Union*,
    949 F. Supp. 979 (N.D.N.Y. 1996) ..................................................................... 15

*Hall Street Associates LLC v. Mattel Inc.*,
    552 U.S. 576 (2008) ............................................................................................ 21

*Interview Inc. v. Fuller*,
2014 N.Y. Misc. LEXIS 4213 at *13-14 ................................................................... 8

*Kalyanaram v. Am. Ass'n of Univ. Professors at the N.Y. Inst. of Tech.*,
    742 F.3d 42 (2d Cir. 2014) ................................................................................. 18

*Kassner v. 2nd Ave. Delicatessen, Inc.*,
    496 F.3d 229 (2d Cir. 2007) ............................................................................... 15

*Kavowras v. New York Times Co.*,
    328 F.3d 50 (2d Cir. 2003) ................................................................................... 7

*Legutko v. Local 816, Int'l Bhd. of Teamsters*,
    853 F.2d 1046 (2d Cir. 1988) ............................................................................... 3

*Mack v. Otis Elevator Co.*,
    326 F.3d 116 (2d Cir. 2003) ............................................................................... 16

*Major League Players Ass'n v. Garvey*,
    532 U.S. 504 (2001) ............................................................................................ 20

*Marquez v. Screen Actors Guild*,
    525 U.S. 33 (1998) ....................................................................................... 16, 17

*Moore v. Sunbeam Corp.*,
    459 F.2d 811 (7th Cir. 1972) .............................................................................. 19

*Morelite Constr. Corp. v. N.Y.C. Dist. Council Carpenters Benefit Funds,*
748 F.2d 79 (2d Cir. 1984) ........................................................................... 21

*Mulvihill v. Top-Flite Golf Co.,*
335 F.3d 15 (1st Cir. 2003) ........................................................................... 16

*N.L.R.B. v. Local 282, Int'l Brotherhood of Teamsters,*
740 F.2d 141 (2d Cir. 1984) ...................................................................... 16, 17

*Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.,*
No. 05-CV-2666, 2005 WL 1661093 (E.D.N.Y., July 14, 2005),
*aff'd,* 204 Fed. App'x. 40 (2d Cir. 2006) .................................................... 18

*Nieves v. District Council 37, AFSCME,*
2009 WL 4281454 (S.D.N.Y. Nov. 24, 2009),
*aff'd sub nom. Nieves v. Roberts,* 420 F. App'x 118 (2d Cir. 2011) ................... 21, 22

*Pinkney v. Progressive Home Health Services,*
367 F. App'x 210 (2d Cir. 2010) .................................................................. 19

*Rahman v. Museum of Nat. History,*
No. 10 CV 921 RML, 2012 WL 1077679 (E.D.N.Y. Mar. 30, 2012) .............................. 19, 20

*Sahni v. Staff Attorneys Ass'n,*
No. 14-CV-9873 (NSR), 2016 WL 1241524 (S.D.N.Y. Mar. 23, 2016),
*on reconsideration in part,* No. 14-CV-9873 (NSR), 2016 WL 3766214
(S.D.N.Y. May 13, 2016) ............................................................................ 19

*Saluja v. Local 1199 United Healthcare Workers E.,*
363 F. App'x 91 (2d Cir. 2010) .................................................................. 19

*Scerba v. Allied Pilots Ass'n,*
589 F. App'x 554 (2d Cir. 2014) ................................................................. 18

*Sear v. Cadillac Auto Co. of Boston,*
654 F.2d 4 (1st Cir. 1981) ...................................................................... 20, 22

*Simmons v. Local Union 1199/SEIU,*
No. 01 CV 6566(RCC), 2005 WL 351131 (S.D.N.Y. Feb. 14, 2005) .................................... 19

*Smith v. Local 819 I.B.T. Pension Plan,*
291 F.3d 236 (2d Cir. 2002) ...................................................................... 15

*Spellacy v. Airline Pilots Ass'n Int'l,*
156 F.3d 120 (2d Cir. 1998) ...................................................................... 17

*United Parcel Serv., Inc. v. Mitchell*,
451 U.S. 56 (1981) ....................................................................................... 16

*United Steelworkers v. Enterprise Wheel & Car,
Co.*, 363 U.S. 593 (1960) ........................................................................... 20

*Vaca v. Sipes*,
386 U.S. 171 (1967) .............................................................................. 16, 22

*Vaughn v. Air Line Pilots Ass'n, Int'l*,
604 F.3d 703 (2d Cir. 2010) ........................................................................ 16

*Young v. U.S. Postal Serv.*,
907 F.2d 305 (2d Cir. 1990) ......................................................................... 19

**Statutes**

Federal Arbitration Act, 9 U.S.C. §10(a) .................................................... 21, 22

National Labor Relations Act, 29 U.S.C. § 151, *et seq.* ............................... 15, 18

Labor Management Relations Act, 29 U.S.C. § 185 ......................................... 16

Labor Management Reporting and Disclosure Act , 29 U.S.C. § 401, *et seq.* ............... 3

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................... 6, 15

Fed. R. Evid. 201(b) ....................................................................................... 6

## INTRODUCTION

This action is brought by Georgette Fleischer ("Plaintiff" or "Fleischer") "to vacate an arbitration opinion and award." Complaint and Petition ("Compl.") ¶ 1. Most of Plaintiff's allegations against BCF-UAW Local 2110 ("Union," "BCF" or "Local 2110"), however, involve conduct that is alleged to have occurred well before the Arbitrator's Opinion and Award ("Award') was issued and long before the Union decided not to petition to vacate it. Indeed, many of the allegations pre-date the end of Fleischer's employment with Barnard College ("Barnard") in May of 2017 and are clearly time-barred.

Even assuming the facts alleged in the Complaint to be true, Plaintiff cannot possibly meet the high standard necessary to establish a breach of the Union's duty of fair representation ("DFR"). The alleged facts, rather than providing evidence of arbitrary, discriminatory or bad faith conduct by the Union – as is required to demonstrate a breach of the Union's duty - actually show that the Union's representation of Plaintiff was comprehensive and exemplary.

The Union filed a charge against Barnard with the National Labor Relations Board ("NLRB") on Fleischer's behalf, alleging that her non-reappointment was in retaliation for lawful union activity. It also filed a grievance on her behalf and arbitrated the dispute vigorously, and at great expense, in a six day hearing that resulted in a transcript of more than 800 pages and nearly 100 exhibits, most placed into evidence by the Union. The Union presented six witnesses, including the President of Local 2110, Maida Rosenstein ("Rosenstein"), and an expert witness. The Union submitted a 110-page post-arbitration brief. Plaintiff concedes that the attorney handling the case for the Union did "superb work . . . on the arbitration hearings and his closing brief." Compl. ¶ 106. Despite the Union's extensive efforts, the Arbitrator did not find any violation of the collective bargaining agreement ("CBA") between the Union and Barnard.

Plaintiff asked the Union to bring a legal action to vacate the Award. The standard for vacating an arbitration award is extremely high, and unions have no legal obligation to pursue such relief. While the Union disagreed with the Award, it saw no basis for seeking vacatur.

In a telling admission, Plaintiff concedes in a letter to Union President Rosenstein that she did not want to sue the Union but had to do so to pursue her claim against Barnard:

> "[I]t appears that if I challenge the Berger decision on my own I will have no choice but to sue Local 2110 alongside Barnard in order to gain standing.  I do not want to do that.  I want to work with Local 2110 against Barnard." Compl., Ex. F.

Given Plaintiff's view that the Union did a "superb" job, this concession is not surprising. Plaintiff's admission that she did not want to sue Local 2110, even after receiving the unfavorable Award, hardly comports with her allegations elsewhere in the Complaint that the Union colluded with Barnard to have her terminated and to cheat her out of a fair hearing.  Given this admission, the applicable legal standard, and the alleged facts, any claim that the Union breached its duty to Fleischer is frivolous at best, and the Complaint should be dismissed in full.

## FACTS[1]

### Allegations Concerning the Period Before Fleischer's Non-Reappointment

Plaintiff's Complaint involves several claims that are both very old and have already been litigated. Plaintiff claims that the Union negotiated a weak CBA in 2017 (Compl. ¶¶ 2, 43) and that she was marginalized as a member of the contract bargaining team. Compl. ¶¶ 2, 44, 45, 46, 50.  These assertions are long-since time-barred. The Complaint also contains conclusory and

---

[1] The Union includes facts alleged in the Complaint and facts presented in the Union's post-arbitration brief ("Arb. Br.") and other exhibits attached to the Complaint or incorporated by reference. Plaintiff urges the Court to read the Union's post-arbitration brief from "start to finish" (Compl. ¶ 106) and makes no claim that any of the facts presented therein are inaccurate.

unsupported allegations of animus during this long-ago period, such as that Plaintiff "would have been seen yet again as an unwanted irritant to be gotten rid of," without additional facts to support such a conclusion. Compl. ¶ 58. Taken as a whole, the allegations concerning the negotiation of the CBA reveal no more than strategic differences between Fleischer and other members of the bargaining team. Compl. ¶¶ 2, 37, 39, 41, 48, 52.[2]

Plaintiff claims that the CBA "dismantled" seniority and job security, but in fact before the contract was ratified, Fleischer had no job security. Despite her 17 years of service, she was appointed for just one semester at a time. Arb. Br. 13. Under the CBA, adjuncts like Fleischer are now entitled to two full years of salary if not reappointed, which creates an obvious disincentive for non-reappointment. *Id*. at 8-9. Further, as the Union successfully argued at the arbitration (*id*. at 89-100; Compl., Ex. A (Award) at 52), the CBA requires Barnard to have a good faith basis for not reappointing adjuncts with seniority. While asserting that the CBA's job security provisions are inadequate, Plaintiff also claims that it was clear error for Arbitrator Berger to find that she had no such job security. Compl. ¶ 135. Moreover, Plaintiff previously litigated her complaints about the CBA before the NLRB, and her charge was dismissed. Arb. Br. 13 n.3.

Any claims of collusion with Barnard are contradicted by other factual allegations, including that Union President Rosenstein took a strike authorization vote because she was frustrated by Barnard's intransigence (Compl. ¶ 42), that the Union was preparing for a strike in January 2017 (Compl. ¶ 45), and that Rosenstein commemorated the 20-year anniversary of a successful strike at Barnard to fire up members for a potential strike over stalled negotiations.

---

[2] Fleischer's complaints about the ratification of the CBA (Compl. ¶¶ 53, 54, 55) are unrelated to her causes of action here and, even if true, would fall under the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401, *et seq.*, and would be time-barred. *See Legutko v. Local 816, Int'l Bhd. of Teamsters*, 853 F.2d 1046, 1051-53 (2d Cir. 1988).

Compl. ¶ 61. The Union also posted an article by Fleischer on its website that was "critical of the Barnard administration." *Id*. These are not the actions of a union colluding with management.

Plaintiff's vague and conclusory claims that Rosenstein harbored animus towards her are time-barred, are insufficiently specific to survive a motion to dismiss, and are contradicted by Plaintiff's concessions that Rosenstein was among those who showed up to support her at a court proceeding on one of her legal actions against Barnard (Compl. ¶ 28), that Rosenstein accompanied her to a meeting with her supervisor (Compl. ¶ 63), and that Rosenstein gave her "blessing" to Fleischer's campaign to have Barnard's outgoing President settle the contract. Compl. ¶ 68. Most significant, however, are the extraordinary efforts Rosenstein and the Union undertook on behalf of Plaintiff following her non-reappointment, as detailed below.

**The Union's Handling of the Arbitration Case**

Plaintiff's claims concerning the Union's handling of the arbitration are internally contradictory.  On the one hand, she claims that the Union breached its DFR in its handling of the arbitration and, indeed, colluded with management to get rid of her. On the other hand, Fleischer commends the "superb" work of the Union's lawyer, Carl Levine, in handling the arbitration and in writing the Union's post-arbitration brief and "pleads with the Court to read [the Union's brief] start to finish to appreciate how foul the Berger [Award] is." Compl. ¶ 106.

Plaintiff's specific claims about alleged misconduct by the Union in connection with the grievance and arbitration are: (1) that the Union failed to direct her to file an internal complaint of discrimination against Barnard (Compl. ¶¶ 2, 78); (2) that it delayed a meeting with other non-renewed faculty members in order to prevent them from joining her in a class grievance (Compl. ¶¶ 2, 93); (3) that it failed to demand that Arbitrator Berger recuse himself from the case (Compl. ¶¶ 2, 97, 102, 109-110); (4) that it intentionally delayed the prosecution of the case to harm her

(Compl. ¶¶ 2, 92-96, 101, 119); (5) that she was harmed by the Union's claimed acquiescence to Arbitrator Berger's directions that observers not enter the hearing room except during breaks in the proceeding and that details of witness testimony not be revealed publicly until the hearing was completed (Compl. ¶¶ 118-119), and; (6) that the support it leant to a public campaign on her behalf was inadequate.  Compl. ¶ 98.

As to Fleischer's complaint that the Union failed to direct her to file an internal complaint of discrimination (Compl. ¶¶ 2, 78), Fleischer herself does not allege that this was based on animus or was even intentional, instead saying that "[w]hether in this failing Rosenstein and/or Levine were negligent or acting with malice towards Fleischer will need to be adjudicated by the court." Compl. ¶ 78. Any claim of intent to harm Plaintiff is belied by the facts:

- The Union pursued a claim of illegal retaliation for union activity on Plaintiff's behalf before the NLRB.  Arb. Br. 13 n.3; Award at 13 n.1.[3]

- The Union put substantial evidence into the arbitral record to show that Fleischer's non-reappointment was motivated by anti-Union animus and argued that nothing precluded it from litigating this alleged violation of the CBA. Arb. Br. 58-62, 106 n.58.

- The Union argued that even if a discrimination claim *was* precluded by a failure to file an internal complaint, evidence of discrimination based on union activity was still relevant to the question of whether Barnard had a good faith basis for Fleischer's non-reappointment. Arb. Br. 106-108.

- The parties, including Fleischer, agreed not to make Fleischer's claim of age-based discrimination a subject of the arbitration, in light of her pending complaint on that issue before the New York City Human Rights Commission. Compl. ¶ 31; Arb. Br. 106 n.58.

Given that Fleischer was a member of the Union's negotiating team until shortly before the CBA was finalized and rarely if ever missed a session (Compl. ¶¶ 38, 47), and the fact that she was so opposed to the CBA that she led a campaign against its ratification (Compl. ¶ 51-53),

---

[3] Plaintiff also filed her own action with the NLRB which, like the action filed by the Union, was ultimately dismissed.  Compl. ¶ 87; Arb. Br. 13 n.3; Award at 13 n.1.

any claim that she was unaware of a requirement to file an internal complaint is not credible.[4]

Plaintiff's argument that the Union intentionally delayed a meeting with other non-renewed faculty members in order to prevent them from joining a class action grievance (Compl. ¶¶ 2, 93) is based entirely on speculation and fails to state a cognizable claim for other reasons. It assumes, without alleging, that part-time adjunct instructors like Fleischer would have joined a class action grievance, forfeiting their rich severance packages, if a grievance had been filed sooner. Plaintiff states that accepting severance was not an option *for her* because it would have required her to waive her pending age-discrimination claim against Barnard. Compl. ¶ 75. She has not claimed that any of the other affected adjuncts had pending claims that would have put them in a similar position. Further, even if the other post-probationary adjuncts *had* joined a class grievance, there is no reason to believe it would have affected the outcome of the case.

The NLRB has already dismissed Plaintiff's allegations about the Union's handing of her grievance. After Barnard denied the grievance (Compl. Ex. H), Plaintiff filed an NLRB charge alleging that the Union "failed to adequately process the termination grievance . . . for reasons that are arbitrary, invidious or otherwise unlawful." Declaration of Dana Lossia ("Lossia Decl."), Ex. 2.[5] In dismissing her charge on October 31, 2017, the NLRB found "no basis to conclude

---

[4] Plaintiff also claims that the Union should have directed every other post-probationary faculty member who was not renewed to file an internal complaint of discrimination. Compl. ¶ 78. But a union is in no position to direct a member to make such a complaint. The choice of whether to accept severance or contest a non-renewal is left to individual members under the CBA. Arb. Br. 5-12, 62. Plaintiff has not alleged, nor can she, that the Union prevented any member from filing an internal complaint or grievance.

[5] On a motion to dismiss under Rule 12(b)(6), a court may consider matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). A court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). In general, public records and government documents available from reliable
[Continued on Next Page]

that the Union's handling of your grievance has been arbitrary, capricious, discriminatory or otherwise inconsistent with its duty of fair representation." *Id*. Ex. 3. Moreover, "[t]he evidence gathered during the investigation provides no basis to conclude that the Union requested that the Employer deny your reappointment, nor that the Union caused, or attempted to cause the Employer to deny your reappoint (*sic*) in any other manner." *Id.*

Plaintiff next claims that the Union should have demanded that Arbitrator Berger recuse himself because Berger favored Barnard's "new union-busting law firm" Jackson Lewis. Compl. ¶ 2.  Fleischer's evidence of Berger's alleged bias is the fact that a Jackson Lewis attorney is one of four people listed as recommending Berger on the mediation page of the American Arbitration Association's website. She acknowledges that two of the recommenders were union-side attorneys and two were management attorneys. Compl. ¶ 109. Plaintiff further acknowledges that Berger, a member of the National Academy of Arbitrators, "is a very experienced arbitrator and mediator who has been in professional practice for close to 40 years" (Compl. ¶¶ 11, 117), and that he "may have been fine as an arbitrator for Local 2110 in other settings." Compl. ¶ 109. Finally, Fleischer concedes that Berger is first on the list of the three arbitrators the parties selected to constitute a rotating panel as part of their CBA.  Compl. ¶¶ 11, 109.

In an attempt to show that Arbitrator Berger is biased toward Jackson Lewis, Plaintiff asserts that in three of six court cases that cite Arbitrator Berger, "Berger was working for Jackson Lewis clients." Compl. ¶ 112. Notwithstanding this characterization of Berger's role, as the Court is aware, arbitrators do not work for one client but rather resolve disputes between two

---

internet sources are not subject to reasonable dispute. *See Cali v. E. Coast Aviation Servs., Ltd.*, 178 F. Supp. 2d 276, 287 (E.D.N.Y. 2001). Accordingly, the Court may take judicial notice of charges filed with the NLRB and resulting determinations. *See Kavowras v. New York Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003).

or more parties. Further, it is not surprising that Jackson Lewis would frequently appear in such cases, given that it is one of the largest labor and employment law firms in the country. None of the cases Plaintiff cites (Compl. ¶¶ 112-116) found any wrongdoing by Mr. Berger. In fact, only one of them even involved a claim of misconduct.[6] *See Interview Inc. v. Fuller*, 2014 N.Y. Misc. LEXIS 4213 at \*13-14 ("[n]othing in the record indicates that Arbitrator Berger was in any way prejudiced or that there was 'evident partiality' on Arbitrator Berger's part . . ."). As was the case in *Interview Inc.*, Plaintiff does no more than speculate about Berger's purported bias because of her dissatisfaction with the result of the arbitration. She makes no factual allegations that would establish such bias, and the Union had no basis for demanding recusal, nor is there evidence that the Union's decision was motivated by animus toward Fleischer.

Much of the Complaint is dedicated to Plaintiff's claim that the Union intentionally delayed the processing of the grievance and arbitration in order to harm her. Apart from the fact that the allegations do not support such a claim, Plaintiff has not alleged how a faster process would have resulted in a different outcome. Rather, the allegations show that much of the "delay" was due to the extensive efforts undertaken by the Union to present a thorough case.

The President of the Union met at least three times with Fleischer before the grievance was filed. The Union's attorney was present at two of these meetings. These strategy discussions were delayed by the fact that Fleischer walked out of one of these meetings in frustration before the meeting had concluded. Compl. ¶¶ 89-92. Instead of waiting for Fleischer to contact the Union if she wanted it to pursue her case, "Rosenstein followed up with an email, and discussions between Fleischer and Local 2110 resumed." Compl. ¶ 90

---

[6] The "six cases" referred to by Plaintiff are only actually only four cases, two of which had more than one reported decision at different stages of the litigation.

Plaintiff next alleges that the Union said it would file the grievance at the second step to expedite the process but filed it at the first step. Compl. ¶ 92. Whatever the Union's reasons for doing so, the evidence shows that the Union subsequently asked that the grievance begin at the second step and Barnard agreed. In fact, the Union proposed going directly to arbitration without a grievance hearing, but Barnard refused. Compl., Ex. H (Grievance Answer) at 1.[7]

Plaintiff alleges no facts that would show, even if true, that the Union was complicit in any delay in starting the arbitration. According to Plaintiff, Rosenstein held out the possibility that the arbitration could start in July, and later in October 2017. She apparently blames the Union for the fact that the hearing did not start until April 2018. Compl. ¶ 94. The grievance was filed in June 2017, amended in July to include a claim concerning academic freedom, and heard in August 2017. Barnard answered the grievance on August 28, 2017 (Compl., Ex. H), the first point at which the Union could demand arbitration. Fleischer concedes that Berger then offered two dates in March and April 2018, and that the Union accepted both. Compl. ¶ 95. Berger, an arbitrator heavily in demand, had no sooner dates available. Fleischer asserts that the Union should have *rejected* both dates and "insisted that the parties move to the next arbitrator."[8]  *Id.* Even after conceding that the Union *did* propose using a different arbitrator who could hear the case sooner, Fleischer concludes, without factual basis, that these were "empty gestures for appearance's sake to try to disguise the fact that it was Rosenstein who set the late start date as a

---

[7] The Union initially asked that the grievance be held in abeyance while "the parties continued to negotiate in good faith to address CBA implementation issues." Compl., Ex. H at 1.

[8] Plaintiff bases her claim that the Union should have demanded that Barnard agree to use a different arbitrator on the advice of unnamed attorneys "familiar with this area of law." Compl. ¶ 95. While conceding that Berger was the first arbitrator on the panel, Plaintiff apparently assumes that Barnard would have agreed to skip him. Had it not done so, and had the Union continued to "insist," this might have led to greater delays in the start of the hearing, all of which makes it obvious that this type of strategic decision is properly left to the discretion of the Union.

means of thwarting and retaliating against Fleischer."  She alleges that all of this, including the Union's acceptance of every offered date, was done "to cheat Fleischer of a fair hearing." *Id.*

As to the length of time it took to complete the arbitration, this was at least in part the result of the Union attorney's "superb work . . . on the arbitration hearings and his closing brief." Compl. ¶ 106.[9] The arbitration at issue here was of extreme importance to the Union, not only because it was the first arbitration under the parties' initial CBA, and not just because the Union believed that Plaintiff had been denied good faith consideration for reappointment, but also because Barnard urged an interpretation of the CBA that could have eviscerated its job security provisions. *See* Arb. Br.; Award. For these reasons, the Union litigated the case vigorously and at great expense over six days of hearing, resulting in a transcript of 800+ pages and nearly 100 exhibits, most placed into evidence by the Union. *See* Award at 10. The Union presented six witnesses, including Rosenstein and an expert witness, a prominent scholar with expertise in the work evaluation of professional women and student evaluations of teaching. *Id.*; Compl. ¶¶ 125, 127. The Union submitted a 110-page brief on Fleischer's behalf. Given the lengthy record, the parties granted Berger additional time to issue the Award.  *See* Award at 1.

The Complaint is devoid of factual allegations that would show that the Union intentionally caused delays to harm Fleischer or that delay impacted the outcome of the case.

---

[9] Plaintiff cites the fact that the Union completed other arbitrations within a single day of hearing as evidence that it intentionally delayed her case. Compl. ¶ 101. However, Plaintiff's own alleged facts show that the time it took to prosecute her case was due not to misconduct by the Union but rather the complexity of the case and the extraordinary efforts the Union made to win it. Plaintiff also asserts that the Union has won every case heard by the other arbitrators on the parties' panel and that one case that should have gone to Berger was assigned to another arbitrator. Compl. ¶¶ 102-103. It should be obvious that individual cases are not fungible. The fact that the Union prevailed before other arbitrators on separate claims is not a basis for finding misconduct by the Union or Berger, and Plaintiff does not know the circumstances that led to one case being assigned out of order to an arbitrator other than Berger.

Plaintiff also criticizes Berger for his directives to maintain order during the hearing, none of which limited the parties in their submission of evidence, and she implicitly criticizes the Union for not opposing these rules more vigorously. Compl. ¶¶ 118-119. Specifically, Fleischer alleges that Berger directed her not to bring her baby to the hearing, permitted non-witness supporters in the hearing room only at the start of the proceedings each day, and told participants not to reveal details of the testimony in an effort not to influence future witnesses. *Id*. According to Fleischer, the Union's attorney urged her to go along with these directives, despite his own criticism of them, because he thought it was important for Berger to like her. *Id*. As with the alleged delays in the hearing process, Plaintiff claims that these directives prejudiced her by making it harder for her to benefit from direct action is support of her case. Compl. ¶ 119.[10]  The Arbitrator's oversight of the proceedings was well within his authority, and any claim that the Union violated its duty by following an arbitrator's directives is frivolous. Moreover, any assertion that had the Union refused to comply the resulting outside support would have caused Berger to rule differently on the merits of the Union's claim is utter speculation.

Finally, while conceding that the Union took various actions in support of Plaintiff's public campaign to win her position back, she seems to allege that the Union breached its duty to her by failing to be enthusiastic enough in its support of her outside campaign. Compl. ¶¶ 98, 100. Even though the Union had no obligation to mount *any* public campaign on Fleischer's behalf, by her own admission it did so. Other faculty bargaining units that were part of Local 2110 wrote letters of support to Barnard. Compl. ¶ 87. "[T]he BCF-Local 2110 team wrote a

---

[10] Fleischer asserts that the delay, and Berger's directives, "[took] the wind out of Fleischer's sails with respect to maintaining a base of support . . . and with respect to benefiting from direct action[.]" Compl. ¶ 119.

publicly shared letter to the [Barnard] administration" in support of Fleischer. Compl. ¶ 98. The Union posted an announcement of a "Counter-Convocation" event Fleischer organized on its Facebook page, and Rosenstein and other Union representatives attended the event. *Id.* In fact, Rosenstein spoke in support of Fleischer at the event, and other Union representatives held up a sign that read "REAPPOINT / FLEISCHER." *Id.* Later, the Union participated in "a second direct action organized by Fleischer." Compl. ¶ 100. Fleischer's own allegations thus show that the Union far exceeded any legal duty it had to represent her. Plaintiff's view that the Union's efforts were "tepid" or not as prompt as she wanted are insufficient to state a cause of action.[11]

Despite her criticisms, Plaintiff's admission that the Union did a superb job is dispositive.[12] Compl. ¶ 106. As the facts show, the Union went to extraordinary lengths to present a thorough and well-argued case. The Complaint shows not that the Union violated its DFR in connection with the arbitration, but that it far exceeded it.[13]

---

[11] It is unsurprising that Fleischer, a non-lawyer, would not understand the scope of the DFR. Thus, she alleges that the Union supported her public campaign, but without the vigor she would have liked, in order to "fulfill the letter but certainly not the spirit of the law." Compl. ¶ 100.

[12] Plaintiff makes specific allegations concerning the Union's exemplary work in handling the arbitration. The Union correctly stated the burden of proof (Compl. ¶ 123), correctly raised issues about Wendy Schor-Haim's credibility (Compl. ¶ 124), enlisted an expert witness with great credentials (Compl. ¶¶ 125, 127), repeatedly objected to the conduct of Barnard's counsel (Compl. ¶ 128), "correctly pointed out" that there was only one complaint about Fleischer by a student from a disadvantaged background (Compl. ¶ 132), presented extensive evidence to counter Barnard's claim that Fleischer was racist and elitist (Compl. ¶ 133), and submitted data analysis to rebut Barnard's claims about the grades Fleischer gave her students. Compl. ¶ 134.

[13] Notwithstanding her non-specific claims that the Union bullied and harassed her (Compl. ¶¶ 2, 50), Plaintiff's own admissions show that she was not particularly cooperative or easy to work with. She admits that she refused to attend the NLRB session when an agreement for a consent election was signed because she disagreed with aspects of it (Compl. ¶ 37), resigned from the bargaining team when she was outvoted (Compl. ¶ 51), immediately after receiving notice of her nonrenewal sent a "scathing email [to her Union representatives] lambasting them in general for recklessness with other people's lives" (Compl. ¶ 76), walked out of a meeting with Rosenstein and Levine because she was "frustrated by their responses" (Compl. ¶ 90), and issued a public
[Continued on Next Page]

**The Union's Decision Not to Challenge the Award in Court**

Plaintiff characterizes this litigation as an action "to vacate an arbitration opinion and award" (Compl. ¶ 1) and complains that the Union "refused to challenge a blatantly dishonest and biased [Award]." Compl. ¶ 2.  However, her sole cause of action against the Union asserts that its treatment of her "while she was organizing and bargaining on behalf of the BCF and while she fought for her job" violated the National Labor Relations Act. Compl. ¶ 143. The facts concerning the Union's actions both before and after Plaintiff's non-reappointment, have been summarized above. Plaintiff's allegations concerning the Union's decision not to take the extraordinary step of petitioning to vacate the Award will now be addressed.

It is not surprising that Plaintiff, like the Union, was unhappy with aspects of the Award, including the decision not to reinstate her.  Plaintiff catalogues various aspects of the Award which she thinks Berger got wrong (Compl. ¶¶ 120-141), and she expressed a clear preference for working *with* the Union to vacate the Award. Compl. ¶¶ 104-106, 108. Only when the Union declined to pursue such an action did Plaintiff decide that she had no choice but to sue both Barnard and the Union.

> "[I]t appears that if I challenge the Berger decision on my own I will have no choice but to sue Local 2110 alongside Barnard in order to gain standing.  I do not want to do that.  I want to work with Local 2110 against Barnard." Compl., Ex. F.

*See also* Compl. ¶ 108 ("Fleischer's only means of seeking justice on her termination from Barnard and the effective ending of her teaching career is to bring legal action on her own and

flyer claiming that the Union did not want "the bother or expense of a grievance let alone an arbitration" and had "botch[ed]" her arbitration (Compl. ¶ 99 and Exhibit E), despite her later admission that the attorney handling the case had done a superb job. It is thus not surprising, if true, that Rosenstein would have said that Fleischer "doesn't know how to compromise." Compl. ¶ 39. Despite Plaintiff's conduct, her own allegations show that the Union represented her fully.

include Local 2110 as one of her opponents.") Fleischer admitted to Rosenstein that she knew the case was "uphill," adding that "Carl [Levine] aced the case. Carl would ace a challenge in court, whether successful or not."[14]  Compl., Ex. F.

Fleischer's admission that she preferred to work with the Union, even after the arbitration had been completed and the Award was issued, hardly comports with her allegations that the Union colluded with Barnard throughout this process to have her terminated and to cheat her out of a fair hearing. Rather, it explains various internal contradictions in the Complaint and provides evidence that her claims against the Union are contrived in order to allow her to challenge, once again in a new forum, her non-reappointment by Barnard.

Finally, Plaintiff concedes that when she asked Rosenstein to join her in trying to vacate the award, Rosenstein articulated various reasons why the Union would not do so, including the fact that attorneys she had spoken to advised her that the chances of prevailing in such an action were low. Plaintiff alleges that Rosenstein also referred to the expense involved in such a challenge, the fact that there were aspects of the decision that were favorable to the Union, and her reluctance to set a precedent that might encourage Barnard to take legal action to vacate decisions in which the Union prevailed. Compl. ¶ 104. Each of these reasons constitutes a valid non-discriminatory basis for not filing an action to vacate. The fact that Plaintiff disagrees with these reasons and characterizes them as "excuses" (*id.*) does not make them unlawful.

---

[14] Plaintiff nonetheless asserts that when she spoke with Carl Levine, the attorney who handled the arbitration for the Union, after receiving the Award, he gave her a "different message" than the one Rosenstein had given her when she said that attorneys had advised her that winning a case to vacate an arbitration award would be "very uphill." Compl. ¶ 106. Notably, though she claims that the Union's attorney expressed displeasure with the Award, she *does not allege* that he claimed that the Union would be likely to prevail in an action to vacate the Award.

**ARGUMENT**

## I.   LEGAL STANDARD FOR A MOTION TO DISMISS

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court assumes all facts alleged in the complaint to be true and draws all reasonable inferences in favor of the plaintiff. *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir 2007). However, this principle is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a formulaic recitation of the elements of a cause of action will not do"). Legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. To avoid dismissal, the complaint must contain "enough facts to state a claim to relief that is plausible on its face," that is to say, facts that "nudge[ ] [the plaintiff's] claims across the line from conceivable to plausible. . . ." *Twombly*, 550 U.S. at 570.

Courts may not draw unwarranted inferences to aid the pleader. *See Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (citation omitted); *Hague v. United Paperworkers Int'l Union*, 949 F. Supp. 979, 987 (N.D.N.Y. 1996) (holding plaintiff's mere "conclusory allegations of arbitrariness and bad faith . . . without specifying supporting facts to show a union's lack of good faith, fail to state a valid claim.") (citation and internal quotation omitted).

## II.   THE UNION DID NOT BREACH ITS DUTY OF FAIR REPRESENTATION

While framed as an action to vacate an arbitration award (Compl. ¶ 1), Fleischer's sole claim against the Union is that it breached its duty of fair representation ("DFR") to her in violation of § 8(b)(1)(A) of the National Labor Relations Act ("NLRA"), through conduct that "was motivated by discriminatory and retaliatory intent, *animus* and malice." (Emphasis in original) (Compl. ¶ 143). Claims involving interpretation of the CBA between the Union and

- 15 -

Barnard are also governed by § 301 of the Labor Management Relations Act (LMRA) 29 U.S.C. § 185, which gives federal courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization[.]"

### A.    THE DFR STANDARD

A union breaches the DFR when its "conduct toward a member is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967).  Moreover, to establish a breach of § 301 of the LMRA in connection with the handling of a contract arbitration, "the union's conduct must, first, have been arbitrary, discriminatory or in bad faith, and second, it must have seriously undermine[d] the arbitral process." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003) (citation and internal quotations omitted); *see also Blesedell v. Chillicothe Tel. G.*, 811 F. 3d 211, 221 (6th Cir. 2016) ("In addition to proving arbitrary, discriminatory, or bad-faith conduct, a hybrid claim plaintiff must prove that a union's actions or omissions more than likely affected the outcome of the grievance procedure.") (internal quotations omitted); *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 20 (1st Cir. 2003) ("[T]he claimant must prove an erroneous discharge, a breach of duty on the union's part, and a causal nexus between the two, that is that the union's breach of its duty seriously undermined the integrity of the grievance process.") (quoting *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 61 (1981)).

A union's actions are not "arbitrary" unless it can be said that the Union's behavior was so far outside a "'wide range of reasonableness,' as to be irrational." *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)); *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010). Conduct is irrational only "when it is without a rational basis or explanation." *Marquez v. Screen Actors Guild*, 525 U.S. 33, 46 (1998); *see also N.L.R.B. v. Local 282, Int'l Brotherhood of Teamsters*, 740 F.2d

141, 147 (2d Cir. 1984) (union conduct breaches the DFR only when it is "so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary.") (internal quotations omitted).

A union's conduct is considered discriminatory only if the union's actions are invidious. *See Cooper v. TWA Airlines, LLC*, 274 F. Supp. 2d 231, 243 (E.D.N.Y. 2003) (citing *O'Neill* and *Considine v. Newspaper Agency Corp.*, 43 F.3d 1349, 1357-60 (10th Cir. 1994)) ("Discrimination is invidious if based upon impermissible or immutable classifications such as race or other constitutionally protected categories, or arises from prejudice or animus.").

Finally, a "union acts in bad faith when it acts with an improper intent, purpose, or motive.... Bad faith encompasses fraud, dishonesty, and other intentionally misleading conduct." *Spellacy v. Airline Pilots Ass'n Int'l*, 156 F.3d 120, 126 (2d Cir. 1998) (citations omitted).

The question, therefore, is whether the facts, as alleged, demonstrate "hostile discrimination" based on "irrelevant and invidious" conditions, or show, to the contrary, that the Union acted within the "wide range of reasonableness" that is granted to bargaining agents. *Ford Motor Co.*, 345 U.S. at 338. The "wide range of reasonableness" standard afforded to unions gives them room to make discretionary decisions and choices, "even if those judgments are ultimately wrong." *Marquez*, 525 U.S. at 45-46.

"Congress envisioned the relationship between the courts and labor unions as similar to that between the courts and the legislature." *O'Neill*, 499 U.S. at 66. "This standard of review is a paradigm of judicial restraint." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 314 (1993). Given the highly deferential standard to which unions are entitled, "tactical errors" and even negligence on the part of a union does not give rise to a breach of the DFR. *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43-44 (2d Cir. 1989). As "long as the union acts in good faith,

the courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular disadvantage." *Id.*

**B.    PLAINTIFF'S CLAIMS CONCERNING THE UNION'S CONDUCT PRIOR TO HER NON-REAPPOINTMENT ARE UNTIMELY**

DFR claims must be filed within six months of when plaintiff "knew or reasonably should have known the alleged breach had occurred." *Scerba v. Allied Pilots Ass'n*, 589 F. App'x 554, 556 (2d Cir. 2014); *see also Kalyanaram v. Am. Ass'n of Univ. Professors at the N.Y. Inst. of Tech.*, 742 F.3d 42, 46 (2d Cir. 2014) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 & 169 (1983)); NLRA § 10(b), 29 U.S.C. § 160 (2018). Claims that the union breached its DFR as a result of any conduct prior to Plaintiff's non-reappointment in May of 2017, including *inter alia* its negotiation of the CBA and her treatment by the Union as a member of the bargaining team, are plainly time-barred and should be dismissed.

**C.    THE UNION DID NOT BREACH ITS DFR IN ITS HANDLING OF THE GRIEVANCE AND ARBITRATION**

The allegations concerning the Union's handling of the grievance and arbitration occurred outside of the limitations period, other than the decision not to pursue a petition to vacate the Award. However, even if Plaintiff's allegations concerning the handling of her grievance are found to be timely, the facts alleged do not establish a breach of the Union's DFR. The Complaint should be dismissed because it fails to allege facts sufficient to meet the "enormous burden" imposed for establishing a breach of the DFR. *Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*, No. 05-CV-2666, 2005 WL 1661093, at *7 (E.D.N.Y., July 14, 2005), *aff'd*, 204 Fed. App'x 40 (2d Cir. 2006). Rather, the facts as outlined above show that the Union went well beyond any legal duty it had to Plaintiff in providing her with vigorous and competent representation.

As an initial matter, a union has no legal obligation to arbitrate a claimed violation of a CBA in the first place. *See Bartel v. New York Lithographers' and Engravers' Union No. One-P*, 306 F. Supp. 1266, 1271 (S.D.N.Y. 1969) ("An individual employee has no absolute right to have his grievance taken to arbitration."), *aff'd* 431 F.2d 1205 (2d Cir. 1970); *see also Pinkney v. Progressive Home Health Services*, 367 Fed. Appx. 210 (2d Cir. 2010); *Saluja v. Local 1199 United Healthcare Workers E.*, 363 F. App'x 91 (2d Cir. 2010); *Moore v. Sunbeam Corp.*, 459 F.2d 811, 820 (7th Cir. 1972) ("The Supreme Court in *Vaca* left no doubt that a union owes its members a duty of fair representation, but that opinion also makes it clear that the union may exercise discretion in deciding whether a grievance warrants arbitration.").

Having taken the grievance to arbitration, Plaintiff has not alleged facts to show that the Union acted in a manner that breached its DFR. Rather, Plaintiff's own allegations establish that the Union did a "superb" job in pursuing her case.

Any alleged delay, in itself, does not breach the DFR unless it affects the Union's ability to obtain the sought-after relief, such as dismissal of a grievance or arbitration demand for untimely filing. *See, e.g., Young v. U.S. Postal Serv.*, 907 F.2d 305, 308 (2d Cir. 1990); *Sahni v. Staff Attorneys Ass'n*, No. 14-CV-9873 (NSR), 2016 WL 1241524, at *8 (S.D.N.Y. Mar. 23, 2016) ("the bare and conclusory allegation that the Union manifested bad faith by conspiring with the [employer] [to delay the grievance and arbitration process] does not rise above *Twombly's* plausibility threshold."), *on reconsideration in part*, No. 14-CV-9873 (NSR), 2016 WL 3766214 (S.D.N.Y. May 13, 2016); *Simmons v. Local Union 1199/SEIU*, No. 01 CV 6566(RCC), 2005 WL 351131 (S.D.N.Y. Feb. 14, 2005) (finding no violation where timeliness did not affect arbitrator's decision); *Rahman v. Museum of Nat. History,* No. 10 CV 921 RML, 2012 WL 1077679, at *5 (E.D.N.Y. Mar. 30, 2012) ("Plaintiff makes conclusory allegations that

the Union's purported two-year delay in informing her that it would not take her case to arbitration constitutes either arbitrary or bad faith action[, but] Plaintiff cites absolutely no legal support for the idea that a mere delay in making a decision constitutes arbitrary conduct."). Courts require "evidence of prejudice, non-compliance with time limits set forth in a CBA, egregious departure from standard union practice, or other evidence of bad faith before basing a DFR violation on too-slow grievance of a claim." *Bejjani v. Manhattan Sheraton Corp.*, No. 12 CIV. 6618 JPO, 2013 WL 3237845, at *11 (S.D.N.Y. June 27, 2013), *aff'd,* 567 F. App'x 60 (2d Cir. 2014).

Fleischer has not alleged non-conclusory facts that would show that, had the Union acted differently than it did in any regard, the outcome of the case would have been different.  Thus, Plaintiff's Complaint fails to meet the burden of establishing a viable claim that the Union breached its DFR in connection with its handling of the grievance and arbitration.

### D.   THE UNION HAS NO DUTY TO PETITION TO VACATE AN ARBITRATOR'S AWARD, NOR DID GROUNDS EXIST FOR DOING SO

It is generally not the role of the courts to second guess an arbitrator's findings of fact or interpretation of contractual language. "When a collective bargaining contract calls for final and binding grievance arbitration[,] an arbitration decision is normally final[.]" *Sear v. Cadillac Auto Co. of Boston*, 654 F.2d 4, 7 (1st Cir. 1981) (citing *United Steelworkers v. Enterprise Wheel & Car Co.*, 363 U.S. 593, 599 (1960)). The Supreme Court has repeatedly held "judicial review of a labor-arbitration decision pursuant to [a collective bargaining] agreement is very limited." *Major League Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). Judicial deference to the finality of arbitration is in part designed to encourage the private resolution of workplace disputes. *United Steelworkers*, 363 U.S. at 595.

- 20 -

Plaintiff alleges no grounds that would warrant vacatur here. Section 10 of the Federal Arbitration Act, 9 U.S.C. §10(a), sets forth the exclusive grounds for vacating an arbitration award. *See Hall Street Associates LLC v. Mattel Inc.*, 552 U.S. 576, 578 (2008). An arbitration award may be vacated on four grounds:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a) (2018).

An arbitrator may be disqualified for bias or corruption "only when a reasonable person, considering all of the circumstances, 'would *have* to conclude' that an arbitrator was partial to one side." *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.,* 492 F.3d 132, 137 (2d Cir. 2007) (emphasis added) (quoting *Morelite Constr. Corp. v. N.Y.C. Dist. Council Carpenters Benefit Funds,* 748 F.2d 79, 84 (2d Cir. 1984)).

There is no legal obligation for a union to appeal an arbitration award in court. *Dolan v. Soft Drink and Brewery Workers Union*, 2018 WL 1940428 (S.D.N.Y. Apr. 23, 2018) ("The duty of fair representation generally does not obligate the union to appeal or to file a petition to vacate an adverse award.") citing *Crowell v. Int'l Bhd. of Teamsters*, 2001 WL 1230531 at *4 (S.D.N.Y. Oct. 16, 2001); *see also Nieves v. District Council 37, AFSCME*, 2009 WL 4281454, at *10 (S.D.N.Y. Nov. 24, 2009) ("[T]he weight of authority within the Second Circuit holds that

a union's duty of fair representation simply does not include a duty to appeal an unfavorable arbitration decision."), *aff'd sub nom. Nieves v. Roberts*, 420 F. App'x 118 (2d Cir. 2011). Were it otherwise, "the threat of suit by disappointed members will too often lead unions, against their better judgment, to appeal arbitration awards to the courts." *Sear*, 654 F.2d at 7.

Given that a union does not breach the DFR by settling or withdrawing a grievance *short* of arbitration, *Vaca*, 386 U.S. at 192-193, a union clearly may exercise its discretion not to petition to vacate an arbitrator's award where it does not believe there are grounds to do so. *See Capobianco v. Brink's, Inc.*, 543 F. Supp. 971, 975 (E.D.N.Y. 1982) (holding courts should not second guess union decisions that have an articulate basis), *aff'd mem.*, 722 F.2d 727 (2d Cir. 1983). Not only did Local 2110 have no legal obligation to seek to vacate the Award, Plaintiff has alleged no colorable basis for it to do so, and the Union has articulated reasonable bases for not pursuing such legal action.

Considering the applicable standards for vacatur of an award, and Plaintiff's failure to allege grounds that would allow for such vacatur, much less grounds for finding that the Union breached its DFR in failing to seek vacatur, any claim that the Union breached its DFR by failing to take such action should be dismissed.[15]

---

[15] To the extent that Plaintiff asserts an independent action to vacate the Award, she lacks standing to do so. Only a party to an arbitration proceeding has standing to challenge an arbitration award under the Federal Arbitration Act. "[T]he United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration." 9 U.S.C. § 10(a). Here, the parties to the CBA and the parties to the arbitration are the Union and Barnard. Award at 1.

## CONCLUSION

For all the aforementioned reasons, Plaintiff's Complaint fails to state a claim against the Union for which relief can be granted, and the claims against the Union should be dismissed in their entirety.

Dated:      April 6, 2020
            New York, New York

LEVY RATNER, P.C.

By:     Dana E. Lossia
        *Attorneys for Defendant Local 2110,*
        *Technical, Office and Professional*
        *Union, UAW, AFL-CIO*
        80 Eighth Avenue Floor 8
        New York, New York 10011
        (212) 627-8100
        (212) 627-8182 (fax)
        dlossia@levyratner.com