USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 12/15/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORGETTE FLEISCHER,

                    Plaintiff,

          v.

BARNARD COLLEGE, LOCAL 2110 OF
THE UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL
IMPLEMENT WORKERS,

                    Defendants.

No.  19-CV-10738 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Georgette Fleischer, proceeding *pro se*, brings this action against Defendants Barnard College ("Barnard") and Local 2110 of the United Automobile, Aerospace and Agricultural Implement Workers ("Local 2110"), alleging violations of the National Labor Relations Act, the Labor Management Relations Act, the Labor Management Reporting and Disclosure Act, and the Federal Arbitration Act.  Plaintiff principally seeks vacatur of an arbitration opinion that upheld Barnard's decision to not re-appoint her as an adjunct professor for the 2017-2018 academic year. The Court construes this claim as a 'hybrid' action against Local 2110 for violating its duty of fair representation and against Barnard for breach of the operative collective bargaining agreement.

Before the Court are the motions to dismiss brought by Barnard and Local 2110.  For the following reasons, those motions are granted.

## BACKGROUND

### I. Factual Background

The facts alleged in the First Amended Complaint and Petition ("Complaint") are assumed to be true for the purposes of this motion.  *See, e.g., Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).  The Court also considers the arbitration opinion, as a "written instrument[] attached to the complaint," and the collective bargaining agreement, which is "incorporated into the complaint by reference."  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007).

Plaintiff Georgette Fleischer is an adjunct college professor of English and Comparative Literature.  *See* Compl. ¶ 8.  She began teaching at Barnard College in 2000, primarily in the First Year Seminar Program, where her position was subject to reappointment on an annual basis.  *See id.* ¶¶ 13, 22.  From the 2014-2015 academic year onwards, Plaintiff worked under the supervision of Wendy Schor-Haim, the director of First Year English.  *See id.* ¶ 15.

In 2015, Plaintiff became actively involved in the effort to unionize Barnard Contingent Faculty ("BCF") and won election to the bargaining committee.  *See id.* ¶¶ 2, 31-35, 39.  As the bargaining process intensified, however, Plaintiff was increasingly marginalized by the union.  *See id.* ¶¶ 45-46.  For example, Plaintiff learned that Local 2110 President Maida Rosenstein did not want her to be on the bargaining committee because "she doesn't know how to compromise."  *See id.* ¶ 38.  Plaintiff was shut out of key negotiations, including those in which "seniority and job security were dismantled in the contract."  *See id.* ¶ 42.  The relationship between Plaintiff and Rosenstein became further strained when Plaintiff publicly opposed provisions in the proposed bargaining agreement, particularly those that would "ced[e] to the administration the 'right to determine all matters related to student performance measurement,'" and would forego BCF job security for higher salaries and severance pay.  *See id.* ¶¶ 46, 48, 67.  On February 13, 2017, Fleisher resigned from her paid position on the bargaining committee.  *See id.* ¶ 50.

The collective bargaining agreement ("CBA") between Barnard, its contingent faculty, and Local 2110 was ratified on April 7, 2017. *See id.* ¶ 55; *see also* Dkt. 33-1. With regard to job security, the CBA states that "no appointment or assignment shall create any right, interest or expectancy in any future appointment or assignment." CBA Article 11, § 2. BCF who have taught the same course for more than seven semesters, however, are entitled to a separation payment upon non-reappointment, and "good faith consideration" for appointment. *Id.* § 5. Good faith consideration means that Barnard may deny an appointment to an eligible BCF only in limited circumstances including "[u]nsatisfactory performance or conduct," or upon "creation of a full-time faculty position that absorbs an existing course taught by a [BCF]." *Id.* § 6.

On May 22, 2017, Schor-Haim scheduled a meeting with Plaintiff to discuss staffing for the 2017 Academic Year. Compl. ¶ 72. At that meeting, she revealed that Barnard would not be reappointing Plaintiff because of "the reduction of part-time faculty in order to convert to full-time positions." *See id.* ¶¶ 72-74. When Plaintiff inquired why she specifically would not be reappointed, Schor-Haim explained that students, in anonymous evaluations, had criticized the clarity of Plaintiff's grading standards and her feedback on student work. *See id.* ¶ 74. Schor-Haim had previously raised these two issues in a September 2016 counseling session, but had not voiced further concerns to Plaintiff about her teaching until the May 2017 meeting. *See id.* ¶¶ 62, 69.

The following day, Plaintiff sent a "scathing email" that lambasted Rosenstein and other members of the bargaining committee about the lack of job security provided by the CBA. *See id.* ¶ 75. In a subsequent meeting at the Local 2110 office, Rosenstein expressed to Plaintiff that she was unclear whether "anything could be done [about the non-reappointment] in light of the contract," and was focused primarily on preservation of Plaintiff's right to separation pay whilst challenging the decision. *See id.* ¶ 89. In a June 5, 2017 meeting, Plaintiff and Rosenstein "mutually agreed" to a strategy that would allow other BCF members to join a "class grievance." *See id.* ¶ 92. Rosenstein,

however, reneged on this agreement, deliberately delaying a promised meeting with other terminated BCF. *See id.* Plaintiff maintains that Rosenstein did so "in order to take the wind out of [Plaintiff's] sails with respect to a collective action." *See id.*

Arbitration of Plaintiff's case began on April 25, 2018, nearly a year after Plaintiff was informed about her non-reappointment. *See id.* ¶ 94. Sometime prior to September 2017, Rosenstein reached out, over Plaintiff's objections, to Arbitrator Ralph S. Berger to determine his availability for an arbitration. *See id.* ¶ 95. Berger is one of the "three rotating arbitrators" called for in the CBA. *See id.* ¶ 109; *see also* CBA Article 22 § 4. Pursuant to the CBA, "each arbitration case will be assigned on a rotating basis to the next arbitrator appearing on the list," unless that arbitrator "is not available to hear a case," in which case the "next arbitrator on the list will be promptly notified of the request for hearing." CBA Article 22 § 4. Berger offered the dates of March 1, 2018 and April 25, 2018, and Rosenstein accepted. *See* Compl. ¶ 95.

Although Plaintiff presented evidence to support her contention that Berger had a "conflict-of-interest with Barnard's antiunion law firm [and arbitration counsel] Jackson Lewis," Local 2110 refused to ask Berger to recuse himself. *Id.* ¶ 97. According to Plaintiff, Berger's association with Jackson Lewis is "highly problematic" because Berger had "worked for" clients of that firm in at least three prior cases. *Id.* ¶¶ 109, 112. Each of the cases cited in the Complaint concerned an arbitration or mediation over which Berger had presided, in which one of the parties was represented by Jackson Lewis. *See Surdu v. Madison Glob., LLC*, No. 15 CIV. 6567 (HBP), 2017 WL 3842859, at *2 (S.D.N.Y. Sept. 1, 2017); *Konstantynovska v. Caring Professionals, Inc,* 103 N.Y.S.3d 364, 365 (App. Div. 2019); *Brandifino v. CryptoMetrics, Inc.,* 896 N.Y.S.2d 623, 624 (Sup. Ct. 2010).

The arbitration comprised six hearing-days, beginning on April 25, 2018 and lasting until March 29, 2019. According to Plaintiff, Berger comported himself "cordially" with both sides. Compl. ¶ 117. The arbitrator was tasked with determining whether "Barnard violate[d] the collective

bargaining agreement when it did not offer Plaintiff an appointment for the 2017-18 academic year." *See* Compl., Ex. A ("Arbitration Opinion") at 2.  Local 2110 and Barnard were the only parties to the arbitration.  *See id.*  At the hearing, Schor-Haim testified that, in the prior five or six years, Plaintiff had been the subject of detailed, consistent, and "very negative" comments from students concerning the lack of clarity of Plaintiff's expectations for students.  *See id.* at 14.  Schor-Haim added that one or two students approached her to complain about Plaintiff every semester.  *See id.* at 15.  According to Schor-Haim, those complaints led her to determine that Plaintiff was not an effective teacher in the college's first year writing program.  *See id.* at 22.  To support Schor-Haim's account, Barnard entered into evidence student evaluations from the spring semesters of 2016 and 2017.  *See id.* at 23-27.  Plaintiff challenged the reliability of student evaluations in evaluating teacher effectiveness, primarily through the testimony of an expert witness.  *See id.* at 27-28; *see also* Compl. ¶ 125.

On August 19, 2019, the arbitrator ruled against Plaintiff, concluding that Barnard had "met its burden of demonstrating by clear and convincing evidence that it did not reappoint [Plaintiff] due to unsatisfactory performance," namely her inability to fulfill the goals of the college's redesigned writing program.  *See* Arbitration Opinion at 57.  The opinion noted that the CBA gave Barnard discretion "to make a final decision regarding an appointment using the assessment method of its choice."  *Id.* at 60.

Plaintiff asked Local 2110 to join her in challenging the Arbitration Opinion, but Rosenstein declined to take Fleischer's calls or respond to her emails.  *See id.*  ¶¶ 105-107.  The next time the two met, Rosenstein explained that Local 2110 would not seek to vacate the opinion because: the Union had spent "a lot of money" on the case already, attorneys had advised Rosenstein that the chances of successfully vacating an arbitration award were low, she wanted to preserve the positive precedent set by the opinion, and she wanted to avoid setting a precedent for vacating arbitrations,

which might encourage Barnard to seek to vacate arbitration decisions decided in favor of the union. *See id.* ¶ 104 & n.13.

## II.     Procedural Background

On November 19, 2019, Plaintiff filed a *pro se* Complaint and Petition to vacate the Arbitration Opinion, naming Barnard, Local 2110, and Berger as defendants-respondents.   The Complaint and Petition also sought damages against Barnard for violation of the CBA, against Local 2110 for violations the National Labor Relations Act ("NLRA"), and against Berger for unlawful discrimination.  Plaintiff additionally applied to the Court for *pro bono* counsel.  Dkt. 3.  In an order dated December 30, 2019, the Court denied that application and dismissed Plaintiff's claims against Berger on the grounds of judicial-function immunity.  Dkt. 6.  On April 6, 2020, Local 2110 and Barnard moved separately to dismiss the Complaint and Petition.  *See* Dkt. 26, 30.  Plaintiff subsequently filed the operative Complaint, which no longer lists Berger as a defendant, and adds a new cause of action against Local 2110 for breach of the Labor Management Reporting and Disclosure Act ("LMRDA").

The Complaint alleges that Barnard breached the CBA by failing to reappoint Plaintiff after 17 years of dedicated service to the college.  Compl. ¶ 3.  With respect to Local 2110, the Complaint asserts that the union violated its duty of fair representation by: 1) negotiating weak job-security provisions and insufficient protection for academic freedom into the CBA; 2) marginalizing Plaintiff from the bargaining process; 3) failing to direct her and other non-reappointed contingent faculty to immediately file complaints for discrimination based on age, union activity, and gender through Barnard's internal procedures; 4) delaying the arbitration; 5) refusing to act to replace Berger as the arbitrator; and 6) refusing to challenge the arbitration opinion.  *See id.* ¶¶ 2, 77, 106.  The Complaint further alleges that Local 2110 violated the LMRDA by removing Plaintiff from the Union email listserv, by failing to inform its members concerning the provisions of the act, and by virtue of

Rosenstein's misuse of union funds.  *See id.* ¶¶ 143-148.  Lastly, Plaintiff challenges the factual and legal basis for the arbitration award, *see id*. ¶¶ 120-141, and purports to bring claims under § 10 of the Federal Arbitration Act ("FAA"), *see id.* ¶ 4.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where, as here, the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir. 2011)).  "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id*.

## DISCUSSION

## I.    Plaintiff Fails to State a Hybrid § 301/Fair Representation Claim

The Court construes Plaintiff's petition to vacate the arbitration as a 'hybrid § 301/fair representation claim,' alleging that her employer, Barnard, violated § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 158,  and that her union, Local 2110, violated the duty of fair representation that is implicitly guaranteed by the NLRA, 29 U.S.C. § 185(a), *et seq. See DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 164–65 (1983).

Because "an individual employee represented by a union generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties," Plaintiff cannot bring any claims pursuant to the FAA. *See Katir v. Columbia Univ*., 15 F.3d 23, 24–25 (2d Cir. 1994) (per curiam).  As a result, Plaintiff's allegations regarding the arbitration proceeding

itself—that Berger exceeded his authority in issuing the opinion, *see* Compl. ¶ 120, applied the wrong standard of proof, *see id*. ¶ 123, and failed to adjudicate the relative credibility of the witnesses, *see id*. ¶¶ 124-25—must be dismissed.  Plaintiff does not have standing to relitigate the arbitration in this Court.

Plaintiff does have standing, however, to bring a hybrid claim, a cause of action that the Supreme Court created "in order to give an employee-plaintiff standing to attempt to vacate an arbitration award." *Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.,* 204 F. App'x 40, 41–42 (2d Cir. 2006) (citing *DelCostello,* 462 U.S. at 164–65).  In such an action, an employee may bring suit against both the union and the employer, and must show (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation.  *See, e.g., Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638,* 227 F.3d 29, 33 (2d Cir. 2000) (per curiam).  As the claims against the employer and the union are "'inextricably interdependent'" in a hybrid cause of action, "a plaintiff's ability to sue their employer is contingent on the threshold showing that the union breached its duty of fair representation." *Vargas v. Serv. Employees Int'l Union Local Union No. 325-32J,* No. 05 CIV. 9992 (PKC), 2006 WL 3019565, at *4 (S.D.N.Y. Oct. 23, 2006) (quoting *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 62 (1981)), *aff'd sub nom.*, *Vargas v. Local Union No. 32B-32J,* 251 F. App'x 702 (2d Cir. 2007).  Because Plaintiff does not plausibly allege that Local 2110 violated its duty of fair representation with respect to the arbitration, her hybrid § 301/fair representation claim fails as a matter of law.

As an initial matter, all of Plaintiff's claims against Local 2110 that challenge conduct that occurred prior to the arbitration are time-barred.  Hybrid § 301/fair representation claims are subject to a six-month limitations period, which "begins to run when the employee knew or should have known of the breach of the duty of fair representation." *Carrion*, 227 F.3d at 33-34.  Plaintiff filed this action in November 2019.  Accordingly, all of Plaintiff's claims concerning collective bargaining,

all of which took place in 2017, are time-barred.  The only claims that are thus actionable in Plaintiff's hybrid cause of action relate to Local 2110's conduct with respect to the arbitration, a process that culminated in August 2019.

"'[A] union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith.'"  *White v. White Rose Food, a Div. of DiGiorgio Corp.,* 237 F.3d 174, 179 (2d Cir. 2001) (quoting *Marquez v. Screen Actors Guild, Inc*., 525 U.S. 33, 44 (1998)).  This high standard reflects that judicial review of union action "must be highly deferential, recognizing the wide latitude that unions need for the effective performance of their bargaining responsibilities." *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998) (internal quotation marks and alterations omitted); *accord Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010).

Union conduct is unlawfully "arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (internal quotation marks and citation omitted).  "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Marquez,* 525 U.S. at 45-46.  "A union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation." *Id*. at 46.  Absent a showing that the Union's tactical decisions in carrying out the arbitration were "so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary. . . . the award of an arbitrator whose decision the parties have contractually agreed will be final may not be disturbed." *Barr v. United Parcel Serv., Inc*., 868 F.2d 36, 43 (2d Cir. 1989) (internal quotation marks omitted).  "A union acts in bad faith when it acts with an improper intent, purpose, or motive." *Spellacy*, 156 F.3d at 126.  A showing of "[b]ad faith requires a showing of fraudulent, deceitful, or

9

dishonest action." *Sim v. New York Mailers' Union No. 6,* 166 F.3d 465, 472 (2d Cir. 1999). Decisions of a tactical nature, errors of judgment, or negligent actions do not amount to bad faith. *Barr*, 868 F.2d at 43–44. Lastly, "[a] union's acts are discriminatory when substantial evidence indicates that it engaged in discrimination that was intentional, severe, and unrelated to legitimate union objectives." *Vaughn*, 604 F.3d at 709.

If a plaintiff establishes that the union violated its duty of fair representation according to the above-cited standards, she "must then also prove that there was a causal connection between the union's wrongful conduct and [her] injuries." *White*, 237 F.3d at 179. When the claim involves an arbitration proceeding, a plaintiff must prove that the union's conduct "'seriously undermine[d] the arbitral process.'" *See Barr*, 868 F.2d at 43-44 (quoting *Hines*, 424 U.S. at 567) (alteration in *Barr*).

Plaintiff's claims that Local 2110 failed to fulfill its duty of fair representation in its handling of her arbitration fail on the merits. In no instance does the Complaint plausibly allege either that the union acted beyond its legal discretion or that its conduct caused her cognizable injury.

A.       **The Delay in Arbitration**

The Complaint does not allege sufficient facts to adequately plead a breach of the duty of fair representation with respect to the union's role in delaying the arbitration. Plaintiff contends that Rosenstein, "motivated by *animus* towards [Plaintiff]" set the late start date of the arbitration "as a means of thwarting and retaliating against [Plaintiff]." Compl. ¶ 95. In its motion to dismiss, Local 2110 argues that "Plaintiff has failed to allege facts to show that the outcome of her case was negatively affected by any purported delay." Dkt. 49 at 5. The Court agrees, and therefore dismisses those claims without making any determination about the propriety of the union's actions.

Although the nearly year-long delay must have caused considerable frustration for Plaintiff, the Complaint does not plausibly allege a causal connection between the delay and any legally cognizable injury. Plaintiff maintains that the delay "t[ook] the wind out of [her] sails with respect

to a collective action," and may have eroded her base of support for such an action.  *See* Compl. ¶ 93.

Other than the conclusory statement "that delay always works to the administration's advantage," *id*.

¶ 91, the Complaint does not allege that the delay had any effect on the outcome of the arbitration

proceeding.  *See Barr*, 868 F.2d at 43-44.  Plaintiff does not claim any spoliation of evidence, any

difficulty in locating witnesses, or any of the other obstacles typically associated with a protracted

legal proceeding.  Because a causal connection between the union's conduct and Plaintiff's injuries

is a required element of a breach of the duty of fair representation, this claim fails as a matter of law,

regardless of whether the union's conduct in delaying the proceeding was arbitrary, discriminatory,

or in bad faith.  *See White,* 237 F.3d at 179.

### B.        The Failure to Press a Collective Action

Plaintiff's claims regarding the union's failure to "immediately direct every post-probationary

terminated faculty member to file internal complaints for discrimination," Compl. ¶ 77; *see also id.*

¶¶ 2, 92-93, likewise fail as a matter of law.   Although Rosenstein failed to comply with her

"agree[ment]" with Plaintiff to press a "class grievance," see *id.* ¶ 92, that failure alone is insufficient

to establish a breach of the duty of fair representation.  Plaintiff does not allege that any other similarly

situated union member expressed interest in filing such a grievance.   The Complaint instead suggests

that the collective action was Plaintiff's idea alone, and that BCF would join in "should they choose

to."  *Id.* ¶ 92.  There is no allegation that Local 2110 possesses the authority to direct members of its

bargaining unit to file grievances.  Plaintiff does not allege that the union was legally required to press

a class grievance under those circumstances, nor is the Court aware of any legal authority for such a

proposition.  Accordingly, the facts asserted in the Complaint, even if proven true, do not plausibly

allege that the union's discretionary choice to pursue individual, rather than collective action, fell

outside the "wide range of reasonable[]" responses to Plaintiff's non-reappointment.  *Marquez,* 525

U.S. at 45–46.  The Court must instead defer to Local 2110's judgment about how best to carry out

is bargaining responsibilities.  *See Spellacy,* 156 F.3d at 126.

### C.       The Failure to Object to Berger's Role as Arbitrator

The allegations stemming from the union's decision to not seek replacement of the arbitrator

suffer from similar failings.  The Complaint alleges that Local 2110 declined to ask Berger to recuse

himself "despite evidence [that Plaintiff] presented that Berger ha[d] a conflict-of-interest with

Barnard's antiunion law firm Jackson Lewis."  Compl. ¶ 97.  After failing to persuade Rosenstein,

Plaintiff unsuccessfully pressed the conflict-of-interest issue farther up the union chain-of-command,

even writing to the Union President.  *See id.* ¶ 110.  Plaintiff avers that Berger was biased in favor of

Jackson Lewis because she had identified at least three instances in which Berger conducted an

arbitration or mediation in which the employer was represented by that firm.  *See id.* ¶ 112.  Plaintiff

asserts that Berger "was working *for* Jackson Lewis clients."  *Id.*  ¶¶ 112, 115 (emphasis added).   In

each of the purported examples of such collusive behavior, however, Berger merely presided over

arbitration or mediation proceedings in which Jackson Lewis represented a party.  *See id.*  ¶ 112 n.17.

The Complaint further alleges that Plaintiff's counsel "believed Berger, with whom he went to law

school, might have *animus* toward [him]."  *Id.* ¶ 111.  Local 2110 maintains that these allegations,

absent an allegation of a financial relationship between Berger and Barnard or Jackson Lewis or some

other indicia of bias or collusion, do not establish any actionable conflict of interest.  Dkt. 49 at 5.

The Court agrees, and concludes that Plaintiff's allegations of conflict did not create a legal obligation

for the union to act.

This Court has previously held that an arbitrator's "pervasive and continuing dealings and

relationships" to a party's attorneys was insufficient to establish bias under the FAA.  *Merck & Co.*

*v. Pericor Therapeutics, Inc*., No. 16-CV-22 (RA), 2016 WL 4491441, at *9 (S.D.N.Y. Aug. 24,

2016) ("'[T]he balance of case law in the Second Circuit supports the proposition that when a

purported financial interest or financial relationship between an arbitrator and a party to arbitration is indirect, general or tangential, courts should not vacate arbitration awards"' (quoting *Transportes Coal Sea de Venezuela C.A. v. SMT Shipmanagement & Transport Ltd*., No. 09-CV-9029 (KMK), 2007 WL 62715, at *6 (S.D.N.Y. Jan. 9, 2007))).  As such a connection between arbitrator and counsel does not suffice to establish actionable bias so as to justify vacatur of an arbitration award, it follows that a union is not legally required to replace an arbitrator when faced with such accusations.

Accordingly, Local 2110's refusal to act on Plaintiff's concerns does not constitute arbitrary action under the NLRA.  The allegations in the Complaint establish that Local 2110 followed the arbitrator-selection procedure outlined in the CBA:  the union contacted the arbitrator who was next up in the rotation, and set a date upon confirmation that he was available.  While the union could have used Berger's lack of availability until 2018 as a justification to push for a more-labor friendly arbitrator, its failure to do so does not, as a matter of law, qualify as arbitrary action.  The union was well within its legal rights to take the discretionary decision not to challenge Berger, even if it ultimately proved to be a strategically poor one.  *See Marquez,* 525 U.S. at 45-46.  As a result, Plaintiff's allegations of Local 2110's conduct do not state a claim for a violation of the duty of representation.

### D.      Local 2110's Decision Not to Challenge the Arbitration Award

Lastly, Plaintiff fails to allege specific facts that would establish that Local 2110's decision not to challenge the arbitration award was either arbitrary, discriminatory, or in bad faith.  Indeed, the Complaint lists several justifications that Rosenstein provided to Plaintiff for the decision: the low likelihood of success, the cost to the union, and the potentially negative collateral consequences of vacating the original decision.  *See* Compl. ¶ 104 & n.13.  Although Plaintiff characterizes them as mere "excuses," *see id.,* those justifications provide a "rational basis or explanation" for the Local 2110's conduct.  *See Marquez,* 525 U.S. at 46.  While Plaintiff disputes the college's rationale for her

non-reappointment, the CBA vests Barnard with significant discretion in appointment and assignment. *See* CBA Article 11. Under these circumstances, the Court cannot conclude that the union acted arbitrarily. Although "a union may not arbitrarily ignore a meritorious grievance or process it a perfunctory fashion, union members do not have an absolute right to have their grievances taken to arbitration." *Spellacy*, 156 F.3d at 128 (internal quotation marks and alterations omitted). The same logic applies, with even greater force, to an arbitration appeal.

Because Plaintiff has not adequately pleaded that Local 2110 violated the duty of fair representation, her hybrid § 301/fair representation claims are dismissed.

**II.    Plaintiff Fails to State a Claim Under the LMRDA**

Plaintiff brings several additional claims against Local 2110 under the guise of Labor Management Reporting and Disclosure Act, all of which fall outside of the scope of her non-reappointment and the arbitration. None of Plaintiff's factual allegations adequately plead a violation of the LMRDA.

The LMRDA creates a private right of action for "[a]ny person whose rights secured by [Title I] have been infringed by any violation of [Title I]." 29 U.S.C. § 412. Title I of the LMRDA—the "Bill of Rights of Members of Labor Organizations"—"guarantees to union members the right to . . . express any views, arguments, or opinions concerning candidates and union policies," and "protects union members from direct interference with union membership rights in retaliation for their expression of opinions concerning union activities." *Maddalone v. Local 17, United Bhd. of Carpenters & Joiners of Am.,* 152 F.3d 178, 183 (2d Cir. 1998) (internal quotation marks omitted). The Second Circuit has interpreted Title I "to protect speech that concerns union governance and union affairs." *Kazolias v. IBEWLU 363*, 806 F.3d 45, 51 (2d Cir. 2015). The LMRDA does not permit enforcement in federal court of any other titles of the statute absent a prior exhaustion of administrative remedies. *See, e.g.,* 29 U.S.C. § 482 (outlining administrative procedure for

14

enforcement of union electoral rights); *id.* § 501 (describing procedure for enforcing fiduciary duties of union officers).[1]   This Court thus lacks jurisdiction over Plaintiff's claims that the union manipulated the electoral process, *see* Compl. ¶¶ 142, 146-47, 151-53, and that Rosenstein "misused union funds for her personal benefit . . . in breach of Section 501," *id.* ¶ 143.

The only claims that could be construed to allege an infringement of Plaintiff's Title I free-speech rights are Local 2110's alleged failure to inform its members concerning provisions of the act, *see id.* ¶¶ 144-45, and its removal of Plaintiff from the Local 2110 email list, *see id*. ¶¶ 148-50.   As to the former claim, the Complaint alleges only that Plaintiff heard of a colleague at NYU who "*struggled*" to obtain union bylaws.  *Id.* ¶ 145 (emphasis in original).  As there is no allegation that the union violated her rights, Plaintiff has not adequately pleaded an LMRDA claim.  Moreover, Plaintiff evidently obtained the Local 2110 bylaws, because she attached them to her Complaint.  *See id*. Ex. J.  With respect to the union's removal of Plaintiff from its email list, Plaintiff does not specify when such removal occurred, or clarify whether she was removed after her non-reappointment at Barnard, *i.e.*, at a moment in time in which she was not a member of Local 2110.  *See id.* ¶ 148.  No provision of the LMRDA requires a union to keep non-members on its email lists following their discharge, or to invite them to membership meetings.  Moreover, regardless of timing, Plaintiff does not allege that her removal from the email list prevented her from attending meetings or participating in union activities.  Indeed, the Complaint makes clear that Plaintiff was permitted to attend the meetings at which she appeared, even after she was no longer employed by Barnard.  *See id.* ¶¶ 148, 150.  Plaintiff thus does not adequately allege that the union violated her rights to free speech or assembly.  Her claims under the LMRDA must therefore be dismissed.

---

[1] A suit under §501 may only be brought after (a) a member of the union alleges to the union that one of its officers or agents violated the law, (b) the union fails or refuses to sue or secure an accounting within a reasonable time, and (c) the plaintiff obtains leave of court upon verified application for good cause shown.  *See* 29 U.S.C. § 501(b).  As Plaintiff does not allege that she complied with any of the above requirements, her allegations regarding Rosenstein's misuse of funds must be dismissed.

### III.     Leave to Amend

Plaintiff does not expressly seek leave to amend her Complaint if it is dismissed.  "Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [s]he has a valid claim."  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted).  Leave to amend a complaint is not warranted, however, when amendment would be futile.  *See, e.g., Tocker v. Philip Morris Companies, Inc*., 470 F.3d 481, 491 (2d Cir. 2006).  Amendment is futile when "[t]he problem with [a plaintiff's] causes of action is substantive" and "better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Such is the case with Plaintiff's claims.  Local 2110's alleged conduct does not run afoul of the LMRDA or its duty of fair representation.  Better pleading cannot cure these deficiencies. All of Plaintiff's claims are thus dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss Plaintiff's first amended complaint are GRANTED with prejudice.  The Clerk of Court is respectfully directed to terminate items 26, 30, and 49 on the docket and close this case.


SO ORDERED.

Dated:      December 15, 2020
            New York, New York

                                        _____
                                        Ronnie Abrams
                                        United States District Judge

16